UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HAL RUDDICK, TIMOTHY THOMAS,　)
FELICIA BRYANT, BARRY CARR, MOSHE DAVIS,　)
MARSHALL MAUER, as Trustees of THE SERVICE　)
EMPLOYEES INTERNATIONAL UNION LOCAL 4,　)
HEALTH & WELFARE FUND,　)
　)
and　)
　)
　)　No. 07 C 7030
HAL RUDDICK, TIMOTHY THOMAS,　)
FLOYD SCHLOSSBERG, and MARSHALL MAUER,　)　Judge John W. Darrah
as Trustees of THE SERVICE EMPLOYEES　)
INTERNATIONAL UNION LOCAL 4, PENSION FUND　)
　)
　　Plaintiffs,　)
　)
v.　)
　)
REGAL HEALTH & REHAB CENTER, INC.,　)
　)
　　Defendant.　)

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Trustees of the Service Employees Union International ("SEIU") Local 4, Health and Welfare Fund ("Welfare Fund") and of the SEIU Local 4, Pension Fund ("Pension Fund") (collectively, "the Funds"), brought suit against Defendant, Regal Health & Rehab Center, Inc., alleging Defendant owes contributions to the Funds. Before the Court is Plaintiffs' motion for summary judgment.

## BACKGROUND

The Funds are multi-employer benefit plans within the meaning of Section 3(3) and 3(37) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. 1002(3) and 37(A). (Pls.' 56.1(a)(3), at ¶ 3.) Defendant is an Illinois corporation, registered to do business in the State of Illinois. (Pls.' 56.1(a)(3), at ¶ 6.)

Plaintiffs allege that during at least the period of January 1, 2003 through October 31, 2006 (the "relevant period"), Defendant was bound to a collective-bargaining agreement (the "CBA") between SEIU and the Illinois Association of Healthcare Facilities. According to Plaintiffs, under the terms of the CBA, Defendant was required to make monthly contributions to the Funds on behalf of its covered employees. Plaintiffs argue that employers bound to the terms of the CBA, as Defendant allegedly is, agree to be bound by all the terms and conditions of the Declaration of Trust of Local No. 4 S.E.I.U. Health and Welfare Fund (the "Welfare Trust") and agree to be bound by all actions taken by the Pension Fund's Board of Trustees pursuant to the powers granted them by federal law or the Trust Agreement (the "Pension Trust"). According to Plaintiffs, pursuant to the terms of the Welfare and Pension Trusts, employers who fail to timely remit contributions are liable to the Funds for interest at a rate of 1 percent compounded monthly, liquidated damages of 20 percent once a lawsuit is filed, audit costs, and reasonable attorney's fees and costs. According to Plaintiffs, the CBA also provides that employers who fail to timely remit contributions are liable for legal fees and costs incurred in enforcing payment.

On or about April 17, 2007, Defendant provided the Funds' representatives with Defendant's books and records for the purpose of an audit. (Pls.' 56.1(a)(3), at ¶ 18.) The Funds' auditors produced a report of the results of the audit (the "Initial Audit Report). (Pls.' 56.1(a)(3), at ¶ 19.) The Initial Audit Report reflected the authors' determination that, during the relevant period, Defendant had not made all its contributions to the Funds required by the CBA. (Pls.' 56.1(a)(3), at ¶ 20.) The Initial Audit Report showed that contributions, totaling $3,405, were due to the Welfare Fund and that contributions, totaling $5,627.58, were due to the Pension

Fund. (Pls.' 56.1(a)(3), at ¶ 21.) On June 20, 2007, Plaintiffs, through counsel, informed Defendant of the amounts the Funds claimed were due pursuant to the audit. (Pls.' 56.1(a)(3), at ¶ 22.) On June 29, 2007, Defendant responded by letter, stating that it had "exceptions to the audit," which were submitted under a separate cover letter. (Pls.' 56.1(a)(3), at ¶¶ 23, 25, 27.) However, along with the June 29 letter, Defendant remitted checks in the amounts of $2,535 and $5,290 to the Welfare and Pension Funds, respectively. Defendant also submitted additional disputes to the Initial Audit Report by letter on July 22, 2007. (Pls.' 56.1(a)(3), at ¶ 29.)

Upon the Funds' review of the disputes, certain revisions were made, resulting in a Revised Audit Report. (Pls.' 56.1(a)(3), at ¶ 31.) The Revised Audit Report, not taking into account payments previously received, showed contributions of $2,985.00 were due to the Welfare Fund, and contributions of $5,552.17 were due to the Pension Fund. (Pls.' 56.1(a)(3), at ¶ 32.) These amounts did not include amounts still owed for interest, liquidated damages and audit fees. (Pls.' 56.1(a)(3), at ¶ 32.) The Funds notified Defendant of the Revised Audit Report by letter, dated August 27, 2007. (Pls.' 56.1(a)(3), at ¶ 33.) On September 11, 2007, Defendant responded by letter, admitting that some amount was still owed but disputing contributions owed for certain employees. (Pls.' 56.1(a)(3), at ¶¶ 34-38.) Also in the September 11 letter, Defendant requested a waiver of the audit fees and liquidated damages assessed. (Pls.' 56.1(a)(3), at ¶ 39.) Defendant never, in any correspondence to the Funds prior to the lawsuit, claimed that it was not obligated to make contributions to the Funds or that it was not required to pay the audit fees, interest, liquidated damages or attorney's fees and costs assessed. (Pls.' 56.1(a)(3), at ¶¶ 40, 41.)

During the Relevant Period, Defendant remitted regular monthly reports and contributions to the Funds. (Pls.' 56.1(a)(3), at ¶¶ 43, 45.) During that period, Defendant consistently made wage deductions for union dues from employees' wages and reported and remitted those dues to the Union. (Pls.' 56.1(a)(3), at ¶¶ 46, 48.)

Prior to the filing of this lawsuit, Defendant had the opportunity to submit any disputes and any documentation it believed supported those disputes. (Pls.' 56.1(a)(3), at ¶ 65.) The Funds and/or the Funds' auditors reviewed all disputes and documentation submitted. (Pls.' 56.1(a)(3), at ¶ 66.) Based on that review, the Funds' auditors determined that the documents submitted did not substantiate certain disputes and, therefore, were insufficient to demonstrate that the disputed findings for certain employees were inaccurate. (Pls.' 56.1(a)(3), at ¶ 67.)

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## ANALYSIS

Plaintiffs spend the bulk of their memorandum in support of their summary judgment motion arguing a point not seriously contested by Defendant: that Defendant is bound to the CBA, despite the fact that Plaintiffs cannot produce a signed agreement. *See Bricklayers Local 21 v. Banner Restoration, Inc.*, 385 F.3d 761, 766 (7th Cir. 2004) (*Bricklayers*) ("a collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound, . . . rather all that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement") (internal citations and quotations omitted) (collecting cases). Indeed, considering Defendant's actions, discussed above, it is clear that Defendant considered itself bound by a collective-bargaining agreement.

Plaintiffs then spend a total of two pages arguing that because Defendant has manifested an intent to be bound by a collective-bargaining agreement and because Defendant disputed and did not pay $711.29 in contributions allegedly owed to Plaintiffs, Defendant is now required to pay (1) interest in the amount of $5,126.63, (2) liquidated damages of $1,697.43, (3) audit fees of $8,325.38, and (4) attorney's fees and costs in an unspecified amount.

Defendant essentially concedes that it consented to be bound by a collective-bargaining agreement. Nonetheless, Defendant raises several arguments against liability for the amounts sought. The most persuasive of these objections is that Plaintiffs have offered no competent evidence showing what the terms of the applicable collective-bargaining agreement were. Defendant first argues that the collective-bargaining agreement Plaintiffs provided does not apply to the entire relevant period. The document in question states on its cover page that is effective from April 20, 2005 through December 31, 2007. The relevant period here is January 1, 2003 through October 31, 2006. Thus, Defendant argues, Plaintiffs have not shown what terms were in effect from January 1, 2003 through April 20, 2005.

Defendant also attacks Plaintiffs' reliance on the affidavit of Zachary Nauth to establish the terms of the CBA. The Nauth affidavit sets out, *inter alia*, contributions Defendant was required to remit and the consequences set out under the CBA for failure to do so. Defendant argues that the best evidence rule bars the court from considering the Nauth affidavit to determine the contents of the written collective-bargaining agreement that was supposedly in place prior to April 20, 2005.

Rule 1002 of the Federal Rules of Evidence provides:

> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress.

Fed. R. Evid. 1002. Here, Plaintiffs have not provided a written copy of the collective-bargaining agreement in effect between January 1, 2003 and April 20, 2005. Nor have they cited any exception to Rule 1002 that would permit the Court to consider the Nauth affidavit to determine the contents of that agreement. *See Dugan v. R.J. Corman R. Co.*, 344 F.3d 662, 669 (7th Cir. 2003) (upholding district court decision to strike an affidavit purporting to describe the contents of a trust agreement).

Therefore, while Plaintiffs have shown that Defendant acted as if it was bound by a collective-bargaining agreement during the relevant period, they have not shown what the terms of that collective-bargaining agreement were. Therefore, they cannot prevail on summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is denied.

Dated: October 20, 2009

JOHN W. DARRAH
United States District Court Judge